**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOYCE HENDERSON,

    Plaintiff,

v.

AMERICAN EAGLE PROTECTIVE
SERVICES CORPORATION,

    Defendant.

No. 19-cv-1765 (EGS)

**MEMORANDUM OPINION**

Plaintiff Joyce Henderson ("Plaintiff" or "Ms. Henderson") brings this action against Defendant American Eagle Protective Services Corporation ("Defendant" or "AEPS") alleging discrimination on the basis of sex/gender under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq.*, (Count I) and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1402.11, *et seq.*, (Count III); and retaliation in violation of Title VII (Count II) and the DCHRA (Count IV). Pending before the Court is AEPS's Partial Motion to Dismiss Ms. Henderson's: (1) gender discrimination claims under Title VII and DCHRA arising from a hostile work environment; and (2) gender discrimination claims under Title VII and the DCHRA arising from a discriminatory pay differential.[1] Upon careful

---

[1] Defendants updated the claims for which they seek dismissal based on Plaintiff's clarification of her claims in her Opposition briefing. *See* Def.'s Reply, ECF 12-1.

consideration of the motion, the opposition, the reply thereto, the applicable law, and the entire record herein, the Court **GRANTS IN PART and DENIES IN PART** AEPS's Partial Motion to Dismiss.

I. Background

A. Factual Background

The following facts reflect the allegations in the operative complaint, which the Court assumes are true for the purposes of deciding this motion and construes in Ms. Henderson's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015). Ms. Henderson began working for AEPS in or about October of 2013, as a security officer/special police officer and eventually became a lieutenant. Compl., ECF No. 1 at 3 ¶ 6.[2] Ms. Henderson alleges that in April of 2016, a subordinate officer made sexual advances towards her, which she rebuffed. *See id*. at 3 ¶ 7. After the rebuff, the subordinate officer filed an internal complaint against Ms. Henderson alleging that she was "spending too much time with a [another officer]." *Id*. Thereafter, Ms. Henderson alleges that the subordinate officer became a "continuing problem at work," because he was "routinely insubordinate" in refusing to follow

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

Ms. Henderson's instructions. *Id*. According to Ms. Henderson, whenever she would report the issues involving the subordinate officer to her superiors, she was "ignored, insulted, and/or harassed." *Id*. Specifically, Ms. Henderson alleges that when she reported the subordinate officer to Captain Brooks, one of her superiors, he responded that "there was a report that [Ms. Henderson] was having sex with a co-employee at work." *Id*. Ms. Henderson believes that Captain Brooks repeated the accusation as if he adopted the statement as fact, but noted that it still would not justify the subordinate officer's insubordination. Compl., ECF No. 1 at 3-4 ¶ 7. Ms. Henderson found the statement "demeaning and insulting." *Id*. at 4 ¶ 8. During a later 2016 meeting between Ms. Henderson, the subordinate officer, and Mr. Covington, her direct supervisor, the subordinate officer stated to Ms. Henderson, "you came down here [i.e., work] in a dress with no underwear on." *Id*. at 4 ¶ 9. Ms. Henderson later reported the incident to AESP's Human Resources department, but nothing was done. *Id*. Over the years, the subordinate officer continued to make comments, similar to the "no underwear" comment, towards Ms. Henderson. *Id*. Ms. Henderson expressed her frustration to Mr. Covington, who told her that if she filed a charge against the subordinate officer, she "could be fired for using profanity." *Id*. at 4-5 ¶ 9. Ms. Henderson alleges that "Mr. Covington, on multiple occasions, sexistly [sic] and

3

inappropriately, referred to [her] as 'Joey's girl' ('Joey,' presumably being a reference to Joe Ortman [a project manager])" and sexually propositioned her by asking "when are you going to let me come to Waldorf?" *Id*. at 5 ¶ 10.

Ms. Henderson alleges that "Mr. Covington treated women differently than men," and as an example alleges that he shouted at her improperly, saying "you need to stay your ass here, to complete two schedules," even though it was his job to complete the schedules. *Id*. at 5 ¶ 11. According to Ms. Henderson, Mr. Covington was reprimanded by Mr. Ortman. *Id*. In a separate incident, Ms. Henderson alleges that when she advised Captain Brooks that she could not work past her shift due to a family obligation, he stated to her, "you're full of shit," and Mr. Covington later told her that if she was asked to work past her shift, she had to work past her shift. *Id*. at 5 ¶ 12. Ms. Henderson alleges that she is not aware any of her male colleagues being spoken to in the same manner or being held to the same standard, noting that her male colleague, Lieutenant Sims, "rarely if ever worked [past his shift]" and was "repeatedly and consistently given scheduling preferences" even though Ms. Henderson was more senior. *Id*. Though Lieutenant Sims was hired in "approximate 2016-17," he was paid "more (or the same) for less work performance duties than [Ms.] Henderson performed," and Ms. Henderson alleges that AEPS's "'night

4

differential' [pay] was discriminatory ...." *Id*. at 6 ¶ 13.

Ms. Henderson alleges that "[o]n January 18, 2018, [she] filed a written internal complaint of sexual discrimination with [AEPS]." *Id*. at 6 ¶ 14. Ms. Henderson alleges that, after filing the internal complaint, AEPS immediately began to retaliate against her, and ostracize her by assigning her tasks without her knowledge, which would cause her to either have to hurriedly complete the task or fail to complete the task. *Id*. at 6 ¶ 15. Ms. Henderson alleges that, on March 8, 2018, for the first time, AEPS failed to advise her of a "lock-out" at work, which she found out about by chance; but had she failed to perform her "lock-out" duties, she would have been subject to discipline. *Id*. at 6-7 ¶ 16. Ms. Henderson alleges that Mr. Covington continued to "engage[] in verbally threatening and/or harassing conduct towards" her, such on March 15, 2018, when he and AEPS terminated her without providing a reason. *Id*. at 7 ¶ 17. Ms. Henderson alleges that her "male colleagues were not terminated for committing such significant infractions as sleeping at work, negligently discharging a weapon at work, and leaving a loaded weapon unattended; [and she] had never been disciplined before her termination." *Id*. Finally, Ms. Henderson notes that, during her termination meeting, AEPS stated that her "unemployment [benefits] will not be contested." *Id*. at 7 ¶ 18.

Ms. Henderson filed a Charge with the Equal Employment

5

Opportunity Commission("EEOC") on or about June 29, 2018 and was issued a Right-to-Sue Notice on March 20, 2019. Id. at 2 ¶ 3.

**B. Procedural History**

On June 18, 2019, Ms. Henderson filed the operative complaint, *see* Compl., ECF No. 1, in response to which AEPS filed its Partial Motion to Dismiss on August 16, 2019. *See* Def.'s Partial Mot. to Dismiss, ECF No. 9 ("Def.'s Mot."). Ms. Henderson filed her Opposition to Partial Motion to Dismiss on September 5, 2019, *see* Pl.'s Opp'n to Partial Mot. to Dismiss, ECF No. 11 ("Pl.'s Opp'n"), and AEPS filed its Reply to Opposition to Partial Motion to Dismiss on September 12, 2019. *See* Reply to Pl.'s Opp'n to Partial Mot. to Dismiss, ECF No. 12 ("Def.'s Reply").

The motion is ripe and ready for the Court's adjudication.

**II. Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the

6

... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted).

A complaint survives a Rule 12(b)(6) motion only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint alleging facts which are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). The "doors of discovery" should not be opened for a "plaintiff armed with nothing more than conclusions." *Id*. at 679.

**III. Analysis**

AEPS initially argued that Ms. Henderson's claims of gender discrimination should be dismissed because, outside of her termination, she failed to identify any adverse employment actions to support her claims of discrimination" and that any "claims of discrimination . . . based upon discrete acts or episodes" that occurred in 2016 should be dismissed as untimely under both Title VII and the DCHRA. Def.'s Mot, ECF No. 9-1 at 6-9.

7

In her Opposition, Ms. Henderson states that each of her "[d]iscrimination counts has three components: (i) discriminatory employment discharge; (ii) hostile work environment; and (iii) discriminatory pay differential." Pl.'s Opp'n, ECF 11 at 1. Ms. Henderson then argues that "(1) AEPS's attempt to dismiss foundational factual allegations under Rule 12(b)(6) is legally improper ....;" (2) her complaint "states viable claims for hostile work environment and discriminatory pay differential; and (3) "even if Plaintiff has not stated a viable claim for hostile work environment and/or discriminatory pay differential, allegations sought to be dismissed should not be ordered removed from the [c]omplaint because they provide pertinent 'background information' and/or are the subject of proof and discovery in this case." *Id*. at 1.

In its Reply, AEPS "clarifies that its Motion for Partial Dismissal should be read to seek dismissal of Plaintiff's claims for 'hostile work environment' and 'discriminatory pay differential." Def.'s Reply, ECF 12 at 7-8. AEPS then argues that Ms. Henderson's hostile work environment claims under Title VII and the DCHRA are untimely, *see id*. at 8-13, and reiterates that her pay differential claim should be dismissed (1) under Title VII for failure to exhaust administrative remedies and (2) under the DCHRA because it is untimely. *See id*. at 14-17.

**A. AEPS's Partial Motion to Dismiss is Appropriate.**

In her Opposition, Ms. Henderson argues that AEPS's "Partial" Dismissal Motion is legally improper. *See* Pl.'s Opp'n, ECF No. 11 at 4. Citing several cases from district courts outside this Circuit, Ms. Henderson contends that "[f]ederal District Courts have recognized that it is legally improper to dismiss component allegations of an otherwise proper cause of action." *Id*. AEPS counters that the Court is not precluded from granting a Motion for Partial Dismissal and notes that the Court has granted similar motions on multiple occasions. *See* Def.'s Reply, ECF 12 at 6.

To support her argument, Ms. Henderson cites *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629 (W.D. Va. 2014), where the court ruled that a motion for partial dismissal cannot be based on the type of relief requested. However, this case is not persuasive because AEPS's motion does not seek dismissal based on the type of relief Ms. Henderson is requesting, but instead seeks dismissal of the actual claims alleged in her complaint. *See* Def.'s Reply, ECF No. 12. Indeed, as AEPS points out, this Court has granted motions for partial dismissal in several cases. *See, e.g.*, *Brown v. Vilsack*, 866 F. Supp. 2d 23, 28 (D.D.C. 2012), *aff'd*, No. 13-5051, 2013 WL 4711192 (D.C. Cir. July 30, 2013); *Alston v. Whole*

9

*Foods Mkt. Grp.*, No. CV 17-2580 (EGS), 2018 WL 2561041, at *1 (D.D.C. Apr. 13, 2018). Accordingly, the Court finds AEPS's Motion for Partial Dismissal to be appropriate.

**B. Ms. Henderson's Gender Discrimination Claims under Title VII and the DCHRA arising from a Hostile Work Environment are Timely**

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Similarly, the DCHRA prohibits employers from discriminating against any individual on the basis of a sex. *See* D.C. Code § 2-1402.11(a)(1). Because the legal standards for establishing discrimination claims under Title VII and the DCHRA are substantively the same, the Court will analyze Ms. Henderson's claims under these statutes together. *See Burrell v. Shepard*, 321 F. Supp. 3d 1, 9 (D.D.C. 2018) (Sullivan, J.) (citing *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999)). To state a claim for hostile work environment under both Title VII and the DCHRA, "a plaintiff must show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (internal

quotation marks and citations omitted). However, to succeed "on a motion to dismiss, it is not necessary to establish a *prima facie* case." *Greer v. Bd. of Trs. of the Univ. of the D.C.*, 113 F. Supp. 3d 297, 310 (D.D.C. 2015) (citing *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir. 2015)). Nonetheless, Ms. Henderson "must allege facts that, if true, would establish the elements of each claim." *Id*. (internal quotation marks and citations omitted).

Before commencing an action based on Title VII, a plaintiff must first exhaust her administrative remedies by filing a timely charge of discrimination with the EEOC. *See Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 210 (2010). Generally, "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period . . . 300 days – set forth in 42 U.S.C. § 2000e-5(e)(1)." *Nat'l. Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). The lawsuit following the EEOC charge is "limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). Specifically, a plaintiff's claims "must arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id*. To be actionable under the DCHRA, the plaintiff must file a claim "within one year of

the unlawful discriminatory act, or the discovery thereof . . . ." D.C. Code § 2-1403.16(a).

Because "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute 'one unlawful employment practice,'" the timeliness analysis for those claims is different than claims involving discrete acts. *Morgan*, 536 U.S. at 117. For a hostile work environment claim to be timely, "the employee need only file a charge within ... **300 days of any act that is part** of the hostile work environment" claim. *Singletary v. Dist. of Columbia*, 351 F.3d 519, 527 (D.C. Cir. 2003) (emphasis in the original); *see also Morgan*, 536 U.S. at 122 ("A charge alleging a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.").

AEPS argues that Ms. Henderson's hostile work environment claims are untimely since they "arise from sexual advances and hostile remarks that allegedly took place over several months in 2016 and centered around Plaintiff's relationship with" the subordinate officer. Def.'s Reply, ECF No. 12 at 8-9. Specifically, AEPS contends that because Ms. Henderson "filed her EEOC Charge on June 29, 2018, the limitations period applicable to her Title VII claims reaches back 300 days to September 2, 2017." *Id*. at 9. AEPS also argues that Ms.

Henderson's hostile work environment claims under the DCHRA should exclude any incidents taking place before September 28, 2017. Def.'s Mot., ECF No. 9-1 at 12.

Ms. Henderson argues that the "'timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened [and] [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.'" Pl.'s Opp'n, ECF No. 11 at 9-10 (quoting *Morgan*, 536 U.S. at 117). In reply, AEPS, argues that "'the *Morgan* principle is not an open sesame to recovery for time-barred violations'" and that Ms. Henderson "may not recover under a hostile work environment theory based upon nothing more than an amalgamation of loosely related discrete acts." Def.'s Reply, ECF No. 12 at 11 (quoting *Baird*, 662 F.3d at 1251).

To be timely, at least one act contributing to the claim must fall within the statutory filing period, but the incidents must be "adequately linked into a coherent hostile environment claim." *Baird*, 662 F.3d at 1251. To determine if a link exists, the Court examines whether the incident "involve[s] the same type of employment actions, occur relatively frequently, and are perpetrated by the same managers." *Id*. (internal quotation marks, brackets, and citations omitted). AEPS argues that Ms.

13

Henderson "cannot rescue her time-barred hostile work environment claims under Title VII or the DCHRA, because the only hostile work environment [actions] described in the Complaint pre-dated the limitations periods, and there is no act falling within the limitations periods . . . ." Def.'s Reply, ECF 12 at 11.

Giving Ms. Henderson the benefit of all inferences that can be derived from the alleged facts, *see Kowal v. MCI Comm'cns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), the Court is persuaded that she has sufficiently stated a timely claim for hostile work environment pursuant to Title VII and the DCHRA. Ms. Henderson's EEOC charge, filed June 29, 2018 alleges sex discrimination and retaliation beginning on April 10, 2016 and continuing through March 15, 2018. Ex., ECF No. 9-3 at 5. In that charge, she alleges that the sexual harassment and/or discrimination began in April 2016 when she rejected the subordinate officer's sexual advances, and "[f]rom then on" whenever she complained to her supervisors about the subordinate officer's insubordination, she was "ignored, insulted, and harassed." *Id*. She further alleges that on January 18, 2018, she filed an internal complaint of sexual discrimination. *Id*. Ms. Henderson further alleges that her supervisor was verbally threatening and harassing towards her and that she was terminated on March 15, 2018. *Id*.

In her Complaint, Ms. Henderson alleges that: (1) a subordinate officer began harassing her in 2016 and continued making improper comments of a sexual nature "over the years," *see* Compl., ECF No. 1 at 4 ¶ 9; (2) Captain Brooks restated the subordinate officer's allegations that she was having sex with a co-employee at work as facts, *see id*. at 3 ¶ 7; told her "you're full of shit" after she could not work beyond her shift, but he did not make similar comments to her male colleagues, *see id*. at 5 ¶ 12; and (3) Mr. Covington (i) refused to discipline the subordinate officer when he made demeaning comments to Ms. Henderson in front him, *see id*. at 4 ¶ 9; (ii) referred to her as "Joey's Girl," on multiple occasions, *id*. at 5 ¶ 10; (iii) made sexual propositions to her, *see id*.; (iv) yelled to her "you need to stay your ass here, [and] complete two schedules," *id*. at 5 ¶ 11; (v) forced her to complete extra duties while her male colleagues were not required to do the same, *see id*. at 5 ¶ 16; and (vi) she filed an internal complaint of sex discrimination on January 18, 2018, *id*. at 6 ¶ 14.

Though Ms. Henderson does not provide specific dates for most of her allegations, she does allege that they occurred over the years. Critically, Ms. Henderson filed her internal complaint on January 18, 2018, which is within the statutory time period. Based on the filing of the internal complaint, the Court can make the reasonable inference that the incidents were

15

continuing through that date. Accordingly, since Ms. Henderson has alleged that at least one act contributing to the claim falls within the statutory filing period, *Baird*, 662 F.3d at 1251, she has stated a timely claim at this juncture.

Furthermore, many of the incidents involved her direct supervisor, many of the comments are of a sexual nature, and they are alleged to have been uttered frequently. Ms. Henderson has alleged that after she rebuffed a subordinate officer's sexual advances, he became routinely insubordinate to her, routinely made comments of a sexual nature to her, and that her direct supervisor and another superior refused to discipline him. Accordingly, these incidents are "adequately linked into a coherent hostile environment claim." *Baird*, 662 F.3d at 1251. Although at this juncture, the Court cannot conclude that Ms. Henderson's hostile work environment claims should be dismissed, it is her burden to put forward evidence supporting the timeliness of her claims as the case moves forward. *See Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 326-27 (D.D.C. 2016) (declining to dismiss plaintiff's hostile work environment claim even though he "faces an uphill battle" based on his allegations of sexual harassment, constant denial of breaks, and constant unwarranted disciplinary action).

Accordingly, the Court **DENIES** AEPS's Motion to Dismiss as to Ms. Henderson's gender discrimination claims under Title VII

and the DCHRA arising from a hostile work environment.

### C. Ms. Henderson Failed to Exhaust Gender Discrimination Claim under Title VII arising from a Discriminatory Pay Differential and her Pay Differential Claim is Time-Barred under the DCHRA

AEPS argues that the gender discrimination claims under Title VII and the DCHRA arising from a discriminatory pay differential should be dismissed. Specifically, AEPS contends that the EEOC Charge does not "contain any allusion to Lieutenant Sims receiving more money than Plaintiff for the same work, nor does it mention pay discrimination or males being paid more than females, [which] leaves the EEOC without any clue or hint that she – or any other female employees – may be receiving less money than males." *See* Reply, ECF No. 12 at 16. Ms. Henderson argues that she "exhausted her claim for unlawful pay differential on the basis of sex" when she noted in the EEOC Charge that "I was being treated differently than my male colleagues" and that she had been "discriminated against in violation of Title VII of the Civil Rights Act of 1964 and analogous District of Columbia law." Pl.'s Opp'n, ECF No. 11 at 16. AEPS replies the use of "boilerplate or generic language" does not put the EEOC on notice of the discriminatory act and "deprive[s] [the] EEOC of the information needed to investigate and conciliate alleged violations of Title VII, as intended by Congress." Def.'s Reply, ECF No. 12 at 15. AEPS further contends

that the failure to "include any allegation of pay discrimination in her EEOC charge causes her discriminatory pay differential claim to be subject to a shorter DCHRA limitations period that reaches back only to June 18, 2018." *Id.* at 17.

Even giving Ms. Henderson the benefit of all inferences that can be derived from the allegations, *see* Kowal, 16 F.3d at 1276, the Court agrees with AEPS. In reviewing whether a plaintiff exhausted her administrative remedies, this Court examines whether the claims within the complaint are like or reasonably related to the allegations in the EEOC Charge. *See Park*, 71 F.3d at 907. "A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Id.* In pertinent language Ms. Henderson quotes from her EEOC Charge:

> The sexual harassment and/or discrimination began in April of 2016. A subordinate of mine, Officer Jones, had made sexual advances towards me. After I rejected him, he filed a bogus complaint against me for spending too much time with a coworker. From then on, Officer Jones was a constant problem. He was insubordinate. Whenever I complained about it to my superiors, I was ignored, insulted and harassed. A co-worker told me there were rumors that I was having sex at work, which was not true. On January 18, 2018, I filed an internal complaint of sexual discrimination. I was being treated differently than my male colleagues.

Pl.'s Opp'n, ECF No. 11 at 11; EEOC Charge of Discrimination 570-2018-02700, ECF No. 9-3. The Court notes that "the central

18

question is whether the employee's complaint contained 'sufficient information' to put the agency on notice of the claim and to 'enable the agency to investigate' it." *Crawford v. Duke*, 867 F.3d 103, 109 (D.C. Cir. 2017). Here, nothing in the quoted language from Ms. Henderson's EEOC Charge would provide any notice to the EEOC to investigate any differences in pay among Ms. Henderson and her male colleagues. In *Crawford*, the Court of Appeals for the District of Columbia Circuit found that the plaintiff properly exhausted two claims that were not mentioned in his EEO complaint because they were mentioned in accompanying memorandum, but held that the plaintiff failed to properly exhaust the third claim when it was not included in the complaint or in the documentation attached to the complaint. *See* 867 F.3d at 109-11; *see also Hicklin v. McDonald*, 110 F. Supp. 3d 16, 21 (D.D.C. 2015) (holding that plaintiff's "retaliation claim is not 'like or reasonably related' to his race and religious discrimination claims in light of the fact that his amended complaint lacks any indication that the allegedly unlawful conduct described was motivated by [plaintiff]'s prior EEO charge.").

As the Court has found that Ms. Henderson's discriminatory pay differential claim was not included in her EEOC Charge, the Court must also find that the statute of limitations for this claim under the DCHRA was never tolled. Under the DCHRA, Ms.

19

Henderson was required to bring her pay differential claim within a year of her termination. *See* D.C. Code § 2-1403.16(a). As Ms. Henderson was terminated in March 15, 2018, but filed the instant action on June 18, 2019, she is time-barred under the DCHRA.

Accordingly, the Court **GRANTS** AEPS's Motion to Dismiss as to Ms. Henderson's gender discrimination claim under Title VII and the DCHRA arising from a discriminatory pay differential.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS IN PART and DENIES IN PART** AEPS's Partial Motion to Dismiss. The Court **DENIES** AEPS's Motion to Dismiss as to Ms. Henderson's gender discrimination claim under Title VII and the DCHRA arising from a hostile work environment. The Court **GRANTS** AEPS's Motion to Dismiss as to Ms. Henderson's gender discrimination claim under Title VII and the DCHRA arising from a discriminatory pay differential. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 26, 2020**